UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 98-14048-CR-UNGARO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALBERT LEE RIGGINS,

    Defendant.

_____/



FILED by _____ D.C.

MAY - 1 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON FINAL EVIDENTIARY HEARING IN REGARDS TO PETITION ALLEGING VIOLATION OF CONDITIONS OF SUPERVISED RELEASE

**THIS CAUSE** having come on to be heard upon the Petition Alleging Violation of Conditions of Supervised Release and this Court having conducted a hearing on April 30, 2008, at which time this Court received evidence, testimony and arguments of counsel, this Court recommends to the District Court as follows:

    1.    The Petition alleges three violations of supervised release:

| | |
|---|---|
| **Violation Number 1** | **Violation of Mandatory Condition,** by failing to refrain from violation of the law. On or about August 20, 2007, in Port St. Lucie, Florida, the supervised releasee was driving with a suspended license, contrary to Florida Statute 322.34. |
| **Violation Number 2** | **Violation of Standard Condition,** by failing to notify the U.S. Probation Officer within seventy-two (72) hours of being questioned by a law enforcement officer. On or about August 20, 2007, the supervised releasee was issued a criminal traffic citation by Port Saint Lucie Officer Byrne for driving with a suspended license and the supervised releasee failed to advise the U.S. Probation Officer. |

| | |
|---|---|
| **Violation Number 3** | **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about February 2, 2008, in Port Saint Lucie, Florida, the supervised releasee possessed crack cocaine, contrary to Florida Statute 893.13. |

2. The Defendant admitted Violation Number 1 before this Court. This Court conducted an inquiry of the Defendant under oath and is satisfied that he understands that by admitting the allegations contained within Violation Number 1 of the Petition, that he is waiving his rights regarding an evidentiary hearing on that particular violation. Further, this Court is satisfied that the Defendant understands that by admitting Violation Number 1, there may be sufficient cause for the District Court to revoke his supervised release and sentence him to a period of incarceration in the Bureau of Prisons. The Defendant acknowledged his understanding of these rights and that he has fully discussed the matter with his attorney. Further, this Court is satisfied that the Defendant was not offered any promises or inducements for admitting Violation Number 1. Additionally, this Court is satisfied that the Defendant admitted Violation Number 1 of his own free will and accord since he does, in fact, admit to driving with a suspended license and receiving a citation by local law enforcement on August 20, 2007.

3. The Defendant contests the allegations contained in Violation Numbers 2 and 3. Therefore, this Court proceeded with an evidentiary hearing in regards to those violations.

4. The first witness called by the government was Officer Byrne of the Port St. Lucie Police Department. Officer Byrne testified that on or about August 20, 2007, he made a traffic stop of the Defendant's vehicle. It was determined that he was operating the motor vehicle while his license was in fact suspended. Officer Byrne testified further

that previous to becoming a police officer, that he was a probation officer in the State of North Carolina. He instructed the Defendant to make sure that he notified his United States Probation Officer of this contact with the police and the citation he was receiving for driving while license suspended. The Defendant had informed Officer Byrne that he was on federal probation and acknowledged that he would contact his probation officer once he was released.

5. The next witness to testify for the government was DEA Agent Alvey. He testified that on or about January 31, 2008, the DEA and local law enforcement received information from a confidential source (CS) that the Defendant was selling narcotics from his residence. The Defendant's residence is located at 4648 S.W. Leeward Street, Port St. Lucie, Florida. This Court notes that this is the same address which the Defendant gave to Officer Byrne at the time that he was detained for the traffic stop in August of 2007 as referenced above.

6. Based upon the information received from the CS, officers with the Port St. Lucie Police Department provided the CS with $150. The serial numbers of the money were recorded by the case agent detective. The CS was searched to make certain that he had no other monies or narcotics on his person. This CS was also fitted with an electronic listening device. Other officers were stationed in the area to keep the street where the Defendant's home was located under constant surveillance.

7. The CS went to the Defendant's home on February 1, 2008 and met the Defendant there. The CS purchased from the Defendant in exchange for $150, a substance which was later determined to be cocaine base, commonly known as crack cocaine. The weight of the crack cocaine was .7 grams.

3

8. Based upon this controlled buy, a State search warrant was issued. The Port St. Lucie Police Department executed the search warrant in the early morning hours of February 2, 2008. During the search of the residence, the $150 in investigative funds was seized from the top of the dresser in the Defendant's master bedroom. There was also seized approximately 5.7 grams of cocaine base which was located by law enforcement in a television cabinet in the master bedroom. It is noted that at the time of the execution of the search warrant, the Defendant, his wife and three minor children were in the residence. No other adults occupy the residence.

9. According to Agent Alvey, the Defendant's wife told law enforcement that the Defendant had been selling crack cocaine from their home for approximately three months to help pay the bills.

10. The Defendant's recorded statement was admitted at this hearing as Government's Exhibit 1. It is a CD recording of the Defendant's statement which was played in open court. During that statement, the Defendant is advised of his <u>Miranda</u> rights by the detective in charge of the matter for the Port St. Lucie Police Department. Initially, the Defendant indicated that he did not want to speak with the officers. However, after the lead detective explained the facts of the situation with the Defendant and again advised the Defendant of his <u>Miranda</u> rights, the Defendant agreed to speak with the officers off the record. The recording was then stopped.

11. Agent Alvey testified that the recording equipment was turned off at the Defendant's request by the Defendant indicating by nodding at the recording equipment during the interview. Once it was turned off, the Defendant acknowledged that he had been selling crack cocaine from his residence for the past three to six months in order to

pay his bills. He indicated that his employment was slow and he was using this to support his family. He also testified that he had made other sales of crack cocaine that night. Evidence later received by this Court during the hearing indicates that these other sales were conducted away from the Defendant's home.

12.   The next witness called by the government was United States Probation Officer Jim Peirce. Mr. Peirce began supervising the Defendant in August of 2007. Mr. Peirce testified that as a standard condition of supervised release, the Defendant is required to notify his U. S. Probation Officer within seventy-two hours of having any contact with law enforcement such as receiving a citation for driving while license suspended back in August of 2007. Mr. Peirce testified that he never received any call or message from the Defendant regarding the contact by the Port St. Lucie Police Department in August of 2007. He further testified that no voice messages were left on his telephone at his office and that no other probation officer indicated that they had received a call from the Defendant reporting the contact with police. Further, he testified that the card which he provided to the Defendant has his direct line telephone number into his office.

13.   The Defendant called Detective Kim of the Port St. Lucie Police Department to testify. Detective Kim is the case agent in this matter. He testified that after receiving the information from the confidential source concerning alleged narcotics activity at the Defendant's home in Port St. Lucie, that the CS was given $150 in investigative funds. Detective Kim recorded the serial numbers of the bills involved. Detectives were stationed at the opposite ends of the street where the Defendant lived. Detective Kim was in a third vehicle watching the front door of the house during the entire time. He testified that the CS

purchased crack cocaine from the Defendant in exchange for $150 as referenced previously herein.

14. After the CS left the residence, Detective Kim followed the CS to a secure location and retrieved the narcotics from him. The other officers remained at the scene on surveillance watching the residence.

15. A State search warrant was issued and executed upon the Defendant's home. The Defendant, his wife and three minor children were in the home at that time. A small amount of money was found in the Defendant's wife's purse and she was permitted to keep that money. There were no other large amounts of money found in the residence. Detective Kim testified that it is his department's policy to not seize currency in an amount less than $1,000. He estimated that there was approximately $200 or less in U.S. currency found adjacent to the $150 in investigative funds. While the investigative funds were seized for evidentiary purposes, the remaining money was left at the scene according to Detective Kim.

16. Detective Kim also testified that the Defendant made post-<u>Miranda</u> statements admitting his sale of the crack cocaine to the CS in this instance. Further, the Defendant stated that he had made prior sales of crack cocaine that day, but they were away from the home in Martin County, Florida.

17. The Defendant next testified on his own behalf. He stated that he tried to call his U.S. Probation Officer after being given the traffic citation for driving while license suspended. He testified that he left a message that same night on Mr. Peirce's telephone. Apparently he also had contacted his U.S. Probation Officer after being arrested for the narcotics violation and stated at this hearing that there is no reason he would not have

6

called his probation officer after getting a traffic citation if he was going to call him after he was arrested for the later narcotics violation in February of 2008.

18.  On cross-examination, the Defendant admitted that he personally met with his probation officer a month or so after being given the traffic citation in August of 2007. However, he never mentioned the traffic citation to U.S. Probation Officer Peirce and Mr. Peirce apparently never mentioned it to him. The Defendant testified that he assumed that Mr. Peirce received the telephone message shortly after the Defendant received the traffic citation and that he did not need to bring it up again with Mr. Peirce.

19.  The Defendant also testified that his prior U.S. Probation Officer, prior to Mr. Peirce beginning supervision of the Defendant, said that the Defendant only needed to call in if he ended up going to jail for some offense. If it was only a traffic ticket, the Defendant was told not to worry about it.

20.  The Defendant questioned the laboratory analysis of the crack cocaine seized in this case. Therefore, this Court adjourned the hearing for an hour to allow the government to call the forensic chemist at the local crime laboratory who conducted the analysis. When this Court reconvened after lunch, Babu Thomas, Forensic Chemist at the Indian River Crime Laboratory in Fort Pierce, was called as a witness for the government.

21.  Mr. Thomas testified that he did receive two exhibits in this case. One is identified as Port St. Lucie Police Department Case No. 3-08-002515 which was the crack cocaine sold by the Defendant to the CS. Mr. Thomas analyzed the substance submitted in that exhibit and found it to be cocaine base, commonly known as crack cocaine. The net weight was found to be .7 of a gram. The second exhibit submitted was in Port St. Lucie Police Department Case No. 3-08-002536.  This was the crack cocaine seized

during the execution of the search warrant. The analysis by Mr. Thomas found the substance submitted to be cocaine base, commonly known as crack cocaine, with a net weight of 5.7 grams. A copy of Mr. Thomas' lab report in reference to these two exhibits has been admitted into evidence as Government's Composite Exhibit 2.

## ANALYSIS

22. The standard of proof in respect to evidentiary hearings involving the possible revocation of supervised release is governed by Title 18, United States Code, Section 3583(e)(3). The statute provides that a court may revoke a term of supervised release if the court finds, by a preponderance of the evidence, that the defendant has violated a condition of supervised release. This standard of proof was reiterated by the United States Supreme Court in <u>Johnson v. United States</u>, 529 U.S. 694 (2000). The court in <u>Johnson</u> stated that violations of supervised release, though they may lead to reimprisonment, need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. This is the standard which this Court will use in analyzing the evidence submitted by the parties herein.

23. As stated previously, Violation Number 1 has been admitted by the Defendant so there is no need to go into the allegations concerning his driving while license suspended. In respect to Violation Number 2, counsel for the Defendant simply argues that it is a credibility question between the testimony of U.S. Probation Officer Peirce and the testimony of the Defendant. This Court must make credibility determinations based upon the totality of the facts presented. Such credibility determinations are not based solely upon the status of the witness nor the professions they perform. Rather, credibility determinations are made by weighing the testimony of all

witnesses, taking into account the relative interests of the witnesses, the consistencies or inconsistencies in their testimony and their demeanor on the stand. See United States v. Ramirez-Chilel, 289 F.3d 744 (11th Cir. 2002) and United States v. Boulette, 2008 WL 450509 (11th Cir. 2008).

24. This Court can find no reason to question the testimony of United States Probation Officer Peirce. He was unyielding in his statements that he never received a message or any other contact from the Defendant concerning the Defendant's contact with law enforcement in respect to his driving while license suspended citation. Further, there was no other U. S. Probation Officer in Mr. Peirce's office who indicated that they had received any such message from the Defendant. This Court cannot conceive of any reason why Mr. Peirce would be lying concerning this particular fact.

25. The Defendant has an obvious interest in these proceedings. During his testimony, the Defendant stated that he did not dial Mr. Peirce's telephone number, but merely used a speed dial number programmed into his telephone to call the U. S. Probation Office. Whether or not the phone number was incorrectly entered into the Defendant's phone or otherwise was mis-dialed, is not for this Court to speculate about.

26. In analyzing the demeanor of the witnesses, Mr. Peirce testified without hesitation that he never received any such message or contact from the Defendant. There was no mention of this contact with law enforcement even during the subsequent face-to-face meeting that Mr. Peirce had with he Defendant. The Defendant was equally emphatic that he did make a call. When asked on cross-examination why Mr. Peirce is saying that he never received a phone call, the Defendant's response was something to the effect of "well whatever you say."

27.     This Court finds that Mr. Peirce's testimony is more credible based upon the totality of the evidence received. There is no reason for this Court to believe that he would be anything other than truthful concerning such a minor issue as receiving a phone call from the Defendant. Therefore, the credibility issue is resolved in favor of believing the U. S. Probation Officer over the testimony of the Defendant.

28.     Defense counsel makes no argument concerning the evidence submitted in respect to the narcotics charge of selling crack cocaine and possessing crack cocaine at the Defendant's residence. The only argument made was the issue concerning proof of the laboratory analysis. After that argument was made, this Court offered counsel for the government and counsel for the Defendant the opportunity to have a brief lunch recess to enable the government call Babu Thomas, the forensic chemist. Both counsel for the government and counsel for the Defendant agreed that would resolve the issue. This Court did recess to enable Mr. Thomas to be called as a witness.

29.     The Defendant does not challenge any of the issues concerning the controlled buy of crack cocaine from him, the search warrant, the search of his residence, or the subsequent statements made by he and his wife. The uncontroverted evidence therefore establishes that the Defendant not only sold crack cocaine to a confidential source, but he also was in possession of additional amounts of crack cocaine. The Defendant admitted selling more crack cocaine over a period of three to six months from this same residence.

**ACCORDINGLY**, this Court recommends to the District Court that based upon the preponderance of the evidence standard, this Court finds the Defendant to have violated his conditions of supervised release specifically in respect to Violation Number 1 based

upon his admission in respect thereto and Violation Numbers 2 and 3 based upon this Court's analysis of the evidence thus received at the evidentiary hearing, and that a sentencing hearing concerning his revocation be set by the District Court at its earliest convenience.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Ursula Ungaro, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** this ___ day of May, 2008, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Ursula Ungaro
AUSA Rinku Talwar
AFPD Michael Spivack
U. S. Probation

11